UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 16-CV-23137

**DOHLER S.A., DOHLER USA, INC., and VULCANO AMERICA, LLC,**

**Plaintiffs,**

vs.

**GIFT GURU, a business entity of unknown makeup, AFG DISTRIBUTION, INC., a North Carolina Corporation, JAMES MAGURA, an individual, LUKE PENISTON, an individual, and DOES 1-10,**

**Defendants.**

### DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM, AND IN THE ALTERNATIVE, MOTION TO TRANSFER

Defendants, Gift Guru, ("Gift Guru"), a d/b/a for Hipsaurus, LLC, a North Carolina Limied Liability Company, which merged in October 2015 with AFG Distribution, Inc. ("AFG"), a North Carolina corporation, James Magura ("Magura"), a resident of North Carolina, and Luke Peniston, a resident of North Carolina, (collectively "Defendants"), reply to the response filed by Plaintiffs as follows:

**I.  Lack of Personal Jurisdiction**

**a.  Amazon's contacts are not Defendants' contacts**

In *Celorio v. Google Inc.*, 872 F. Supp. 2d 1327 (N.D. Fla. 2012), a plaintiff attempted to prove personal jurisdiction over a nonresident defendant that did not directly sell allegedly infringing products to Florida based on the defendant's relationship with Google, which does conduct business in Florida. The court held:

> Personal jurisdiction must be established separately for each Defendant, and while Google has an agent in Florida and does business in Florida, jurisdiction for On Demand Books cannot be established based on Google's contacts with the forum….
>
> Defendants Google and On Demand Books have agreed to an independent contractor relationship, and to extend jurisdiction in Florida to any company that contracts with Google, an international corporation, would thwart the due process protections that underlie the personal jurisdiction analysis.

*Id*. at 1333-34.

Likewise, in this case, Plaintiffs attempt to assert personal jurisdiction over AFG and Gift Guru based on sales of allegedly infringing products through Amazon.com. Specifically, paragraph 20 of the Complaint alleges that "Defendants at least use Amazon.com to advertise and sell counterfeit goods. Defendants are *using Amazon* to fulfill genuine sales of Dohler towels in order to build confidence with Amazon." (Italics added). Plaintiffs allege that Defendants used Amazon to fulfill shipments of towels to its customers in Florida. Plaintiffs do not allege that AFG or Gift Guru directly shipped allegedly infringing towels to customers in Florida, only that Amazon did so.[1] Because personal jurisdiction over Defendants cannot, under Celorio, be premised on Amazon's contacts with Florida, Plaintiff has failed to satisfy its burden and the Complaint should be dismissed.

### b. The substantial burden on Defendants to litigate in Florida is unchallenged

Plaintiffs also fail to counter Defendants' arguments that litigating in Florida would be unduly burdensome. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Here,

---

[1] Plaintiffs allege in Paragraph 20 that "Defendants are also offering for sale through at least a second listing on Amazon that is fulfilled directly by the Defendants. However, through the second listing, Defendants are intentionally shipping an inferior towel and packaging, causing consumer confusion." Plaintiffs do not allege, however, that this towel infringes their intellectual property.

Defendants are a North Carolina corporation with all offices and employees in Asheville, North Carolina, and two individuals who live in Asheville, North Carolina. The burden on them to travel to Florida to defend themselves against claims that they sold a mere $380.00 in allegedly infringing towels in Florida is *substantial*, and greatly outweighs Plaintiffs' and Florida's interests in resolving the case in this forum.

Additionally, litigating this case in Florida will be inefficient because both AFG and Gift Guru do not have *any* corporate presence in, or connection with, Florida. All of their witnesses would be greatly inconvenienced by having to travel to Florida for a case involving such paltry sales.

### c. The corporate shield doctrine protects the individual Defendants

Nor should personal jurisdiction be exercised as to individual Defendants Magura and Peniston. "For purposes of personal jurisdiction under Florida law, the corporate shield doctrine creates 'a distinction between a corporate officer acting on one's own and a corporate officer acting on behalf of one's corporation.'" *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993). Also, "Florida courts have held 'that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013); *Belen Jesuit Prep. School, Inc. v. Sportswear, Inc.*, Case No. 1:15-cv-22194-UU, D.E. 26 (S.D. Fla., Sept. 23, 2015) (dismissing corporate officer under corporate shield doctrine). Here, the Complaint makes no allegations against Magura or Peniston that are different than those against the corporate Defendants. There are no allegations that they performed acts for their own benefit as opposed to the benefit of their employer.

In sum, the exercise of personal jurisdiction over Defendants would not be reasonable or fair.

### II. Plaintiffs' claims against individuals James Magura and Luke Peniston are insufficient

Federal district courts recognize that a corporation's officers generally cannot be held liable for acts committed by a corporation in alleged violation of the Lanham Act. For example, in *Northwestern Corp. v. Gabriel Mfg. Co.*, the court considered whether the president of a corporation should be held personally liable for trademark infringement violations of the Lanham Act because, among other things, he signed the trademark application for an allegedly unlawfully obtained trademark. 1996 U.S. Dist. LEXIS 19275, *7-8. The court found no evidence in the pleadings that would justify piercing the corporate veil, but instead found "general and conclusory allegations" that did not "even hint" at deficiencies in the corporate structure or facts suggesting that an inequitable result would follow if claims against the president were dismissed. *Id.* at *33-34. Thus, the motion to dismiss the president as a defendant was granted. *Id*.

Similarly, in *Bowoto v. ChevronTexaco Corporation*, the court addressed whether corporate officers charged with violating a federal statute that allegedly knew of and approved of unlawful conduct within the corporation, could be held personally liable under the alter ego doctrine. 312 F. Supp. 2d 1229 at 1246. Considering the two-part test, the court held that the officers were protected by the corporate shield because the plaintiffs presented no evidence of a unity of interests or of an inequitable result. *Id*. at 1247. The court explained that the "inability of plaintiffs to recover for their losses is not a sufficient inequity to justify overlooking the corporate form." *Id*; *see Innovative Health Solutions, Inc. v Dyansys, Inc., et. al*., Case No. 3:14-cv-05207-SI, D.E. 101, 2015 WL 2398931 (N.D. Cal., April 24, 2015) (dismissing corporate

officer from trademark case where allegations were not sufficient to establish individual liability).

Here, the Complaint contains no allegations of an improper unity of interests between Magura and Peniston and AFG or Gift Guru, nor does it allege that an inequitable result will follow if Magura and Peniston are dismissed as defendants. Instead, the Complaint contains only general and conclusory allegations toward these individual defendants, that they were the "moving force" behind the alleged misconduct, an allegation that fails to address either element of the two-party test. Because Plaintiffs have failed to plead any facts that would justify piercing the corporate veil, a measure that must be approached with caution, all claims against Magura and Peniston should be dismissed.

The Complaint is devoid of specific allegations under which Magura or Peniston could be found liable.  Assuming that Plaintiffs are accusing them of being "Does," only paragraphs 9 and 10 contain allegations concerning their misconduct.  Those allegations are scant, limited to the conclusory assertions that they "contributed to" or "induced" the sale of the allegedly infringing goods. These allegations are legally insufficient to establish liability against Magura and Peniston, both under the corporate shield doctrine and under the cases cited above involving scant, conclusory allegations of corporate officer liability.

Plaintiffs make the novel argument that because Gift Guru allegedly did not register an assumed named with a county office in North Carolina pursuant to N.C.G.S § 66-68, none of the shareholders or employees of Gift Guru or AFG are protected by the corporate veil.  This argument is false and contrary to North Carolina law.

A failure to register an assumed name at a county Register of Deeds office does not lift or remove corporate protections under North Carolina.  The case cited by Plaintiffs, *Tyson v.*

5

*L'Eggs Products, Inc.*, 351 S.E.2d 834, 84 N.C. App. 1 (Ct. App. 1987), does not hold otherwise. N.C.G.S § 66-68 was repealed in 2016 and replaced by N.C.G.S. § 66–71.1 et. seq.  Former North Carolina statue N.C.G.S § 66-71 contains the sole penalty for a violation of N.C.G.S § 66-68.  It limits the penalty for a violation to a $50.00 fine, and, significantly, states that "[t]he failure of any person to comply with the provisions of this Article does not prevent a recovery by such person in any civil action brought in any of the courts of this State." N.C.G.S § 66-71(b).  Further, case law interpreting the statute has made clear that the failure to file an assumed name with the Register of Deeds does not change the corporate nature of the business.   The North Carolina Supreme Court in *Security Finance Co. v. Hendry,* 189 N.C. 549, 127 S.E. 629 (1925) held that the legislature intended, by adding what is now subsection (b) of N.C.G.S <u>§ 66-71</u> (quoted above), that the punishment for violating the law requiring the filing of a certificate of assumed name should be confined to the fine set out in the statute, and that contracts made by persons carrying on or conducting or transacting business in violation of N.C.G.S § 66-68 should not be void.

Therefore, a failure to file an assumed name certificate in the appropriate Register of Deeds office in North Carolina does not remove corporate shield protection from personal and individual liability from all officers, managers, and employees.  Any remedy under the assumed name statute is limited to N.C.G.S § 66-71(b).

    **III.**    **The case should be transferred to the Western District of North Carolina, Asheville Division**

As shown in the declaration of James Magura, no employees of AFG or Gift Guru reside or work in Florida, and both individual defendants reside and work in Asheville, North Carolina.  Magura Declaration ¶ 4, 11, 27.  Because all employees of AFG and Gift Guru, too, reside in Asheville, North Carolina, it is appears that all witnesses will be located in Asheville, North

6

Carolina. In their response, Plaintiffs do not identify any witnesses that are located outside of Asheville, North Carolina, and Defendants are aware of none. Plaintiffs attempt to argue that Defendants failed to name individual witnesses that are necessary for the case. But that argument rings hollow where Mr. Magura's declaration states that *all employees* of the Defendant corporations reside and work in Asheville, North Carolina.

Similarly, because Defendants offices are exclusively in Asheville, North Carolina, and all documents that relate to AFG, Gift Guru, James Magura, and Luke Peniston, are kept in Asheville, North Carolina, it is clear that the universe of Defendants' documents exists only in Asheville, North Carolina. Magura Declaration ¶ 4. and if any third party discovery of Amazon is necessary, this discovery will be collected from Amazon's headquarters in Seattle, Washington.

In sum, this case involves a very small amount of sales of allegedly infringing products. All potential party witnesses and documents are located in Asheville, North Carolina. It would be unfair and inefficient to require all witnesses, who are all located in Asheville, North Carolina, to travel and litigate this case in the Southern District of Florida.

## **CONCLUSION**

For all of the foregoing reasons, Defendants are not subject to personal jurisdiction in Florida, and the Complaint fails, in multiple respects, to state a claim for relief. Accordingly, it should be dismissed. In the alternative, the case should be transferred to the Western District of North Carolina, Asheville Division.

Dated: January 9, 2017                               Respectfully submitted,

<div style="margin-left: 3in;">

/s/ William Heedy
William Heedy
Florida Bar No. 89348
wheedy@vwlawfirm.com
**THE VAN WINKLE LAW FIRM**
11 N. Market Street
Asheville, NC 28801
Telephone:  (828) 258-2991
Facsimile:   (828) 257-2773

Matthew S. Nelles
Florida Bar No. 009245
mnelles@broadandcassel.com
**BROAD AND CASSEL**
One Financial Plaza, Suite 2700
100 SE Third Avenue
Fort Lauderdale, Florida 33394
Telephone:  (954) 764-7060
Facsimile:   (954) 761-8135

*Attorney for Defendants*

</div>

## **CERTIFICATE OF SERVICE**

I **HEREBY CERTIFY** that on January 9, 2017, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the following Service List via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ William Heedy
William Heedy

Service List

Matthew Sean Tucker
Florida Bar No. 90047
Tucker IP
110 SE 6TH Street, Suite 1709
Fort Lauderdale, FL 33301
Telephone: (954) 204-0444
Facsimile: (954) 358-4946
mtucker@TuckeripLaw.com