UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-23137-CIV-GAYLES

**DOHLER S.A., et al.,**

    **Plaintiffs,**

v.

**GIFT GURU, et al.,**

    **Defendants.**

                              /

## ORDER

**THIS CAUSE** comes before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim, and in the Alternative, Motion to Transfer [ECF No. 19]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons that follow, the Court grants Defendants' Motion in part.

## BACKGROUND

On July 20, 2016, Plaintiffs Dohler S.A. ("Dohler"), Dohler USA, Inc. ("Dohler USA"), and Vulcano America, LLC ("Vulcano") (collectively "Plaintiffs"), filed this action against Defendant Gift Guru and Does 1–10. [ECF No. 8].[1] Plaintiffs amended their complaint on November 1, 2016, to include the following Defendants: Gift Guru;[2] ABC Distribution, Inc. ("ABC"), a corporation with its principal place of business in North Carolina; James Magura, a

---

[1]     Dohler is a corporation organized under the laws of Brazil, with its principal place of business in Mexico. Dohler USA is a Florida corporation, and Vulcano is a Florida limited liability company.

[2]     According to the Declaration of James Magura, Hesperia, LLC, a North Carolina company with offices in Asheville, North Carolina, did business as Gift Guru on Amazon. [ECF No. 19-1 ¶ 5].

resident of North Carolina; and Luke Peniston, a resident of North Carolina (collectively, the "Defendants").

Plaintiffs allege that Defendants have infringed on the following trademark claims: (1) DOHLER, Registration No. 2,456,354; (2) DOHLER USA, Registration No. 5,987,304; and (3) Dohler, Registration No. 3,123,456 (collectively, the "Dohler Marks"). Each of the Dohler Marks were legally issued by the United States Patent and Trademark Office to the named owner, Dohler. Plaintiff alleges that Defendants promoted, advertised, and sold counterfeit products that used exact copies of the Dohler Marks. Plaintiffs further allege that Defendants Magura and Peniston directly participated in the wrongful activities.

Defendants have moved to dismiss, arguing that this Court does not have personal jurisdiction over them. Magura and Peniston also argue that Plaintiffs have failed to describe the nature of the claims being asserted against them. In the alternative, Defendants move to transfer venue to the United States District Court for the Western District of North Carolina.

## DISCUSSION

I. SUFFICIENCY OF THE PLEADINGS

### Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant–unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997).

**A. Shotgun Pleading**

A district court has the *sua sponte* obligation to identify and dismiss a "shotgun" complaint. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126-27 (11th Cir. 2014). Recently, the Eleventh Circuit outlined four types of these pleadings, all of which require amendment because they fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). One type of shotgun pleading "commit[s] the mortal sin" of pleading "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1322-23.

Plaintiffs' Amended Complaint impermissibly incorporates the allegations from prior counts into several of the subsequent claims for relief. Count III, which begins at paragraph 44, incorporates the allegations of paragraphs 1 through ***40***; *i.e.*, the general factual allegations, all of Count I, and half of Count II. Count IV, which begins at paragraph 50, incorporates ***all 49*** previous paragraphs. Count V, which begins at paragraph 55, does the same. Many of these repeated allegations "could not possibly be material to [each] count. Consequently, the defendants and the district court must sift through the facts presented and decide for themselves

3

which are material to the particular cause of action asserted, a difficult and laborious task indeed." *JAWHBS, LLC v. Arevalo*, No. 15-24176, 2016 WL 4142498, at *10 (S.D. Fla. Aug. 4, 2016) (internal citations and alterations omitted). Accordingly, the Court dismisses the Complaint in its entirety, with leave to amend.

### B. Individual Defendants

Magura and Peniston also move to dismiss arguing the allegations against them are insufficient to state a claim. The Court agrees. The only allegations in the Amended Complaint that directly relate to Magura and Peniston are in paragraphs 9 and 10, where Plaintiffs allege that Magura and Peniston "directly and/or materially participated in the wrongful activities alleged herein . . . ." [ECF No. 8]. These conclusory allegations, without more, are insufficient to state a claim against the individual defendants. *See Iqbal*, 556 U.S. at 678 (discussing plausibility standard). Plaintiffs may amend their Complaint to provide additional detail as to how Magura and Peniston are individually liable for the alleged wrongful conduct.

## II.     PERSONAL JURISDICTION

The Amended Complaint is subject to dismissal for pleading defects. However, the Court notes that it reviewed the parties' arguments with respect to personal jurisdiction and transfer. The Court finds that, based on the jurisdictional allegations in the Amended Complaint, it has personal jurisdiction over the Defendants and that transfer is not warranted.

### Legal Standard

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). When a defendant submits evidence in support of its challenge to personal jurisdiction, "the burden

traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff," *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted), and still must "accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara*, 916 F.2d at 1514 (11th Cir. 1990).

A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction over a nonresident defendant exists. First, the court must determine whether the exercise of jurisdiction is appropriate under Florida's long-arm statute. Second, the court must determine whether personal jurisdiction over the defendant violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mutual Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004).

### A. Long-Arm Statute

Plaintiffs allege that the Court has jurisdiction over Defendants under Florida's long-arm statute.[3] The long-arm statute provides, in pertinent part:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state [or]
>
> 2. Committing a tortious act in this state.
>
> . . .

---

[3] Plaintiffs cite to incorrect subsections of the long-arm statute (sections 48.193(1)(a), 48.193(1)(b), and 48.193(2)). The correct citation is to Fla. Stat. §§ 48.193(1)(a)(1)–(2) and § 48.193(2).

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. §§ 48.193(1)(a)(1)–(2), 48.193(2). Plaintiffs contend that jurisdiction is proper under all of these provisions. The Court addresses each in turn.

### 1. *General Jurisdiction under Section 48.193(2)*

The reach of the general jurisdiction provision of the Florida long-arm statute is co-extensive with the limits of the Due Process Clause, so the Court need only ascertain whether its exercise of jurisdiction over the Defendants "would exceed constitutional bounds." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010)). The Due Process clause permits personal jurisdiction so long as the nonresident defendant has certain minimum contacts with the forum such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

#### a. **Gift Guru and ABC**

There are two paradigm bases for general jurisdiction over a corporation: its place of incorporation and its principal place of business. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (citation and alterations omitted).[4] For a corporation to be subject to general jurisdiction in any other forum, its affiliations with that forum must be "so 'continuous and systematic' as to render [it] essentially at home" there. *Id.* at 761 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

To support the exercise of general jurisdiction pursuant to section 48.193(2), Plaintiffs allege that Defendants engaged in "substantial and not isolated" activity within Florida "by

---

[4] This same test also applies to limited liability companies such as Gift Guru. *See, e.g.*, *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56 (D.C. Cir. 2017).

virtue of transaction of business within the State of Florida and this District." [ECF No. 8 ¶ 3e]. Such conclusory allegations are insufficient to meet Plaintiffs' burden. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006). Although Plaintiffs allege that Defendants used Amazon.com ("Amazon") to sell at least thirty-two counterfeit products in this District, they do not point to any factors that would justify the exercise of general jurisdiction. Indeed, Plaintiffs do not allege that Defendants have an office, post office box, registered agent, or any other employees in this District. Accordingly, the Court finds that there is no general jurisdiction over Gift Guru or ABC in Florida.

### b. Magura and Peniston

"[F]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler*, 134 S. Ct. at 760. Beyond that, the Supreme Court has provided two other instances in which the exercise of general jurisdiction over an individual is proper: where the individual consents to the forum's jurisdiction and where the individual is present within the forum when served with process. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (plurality opinion). Magura and Peniston, both residents of North Carolina, were not served in and did not consent to jurisdiction in Florida. Accordingly, general jurisdiction over them is improper.

### 2. *Specific Jurisdiction*

Specific jurisdiction "authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Louis Vuitton*, 736 F.3d at 1352 (citing *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1120 n. 27 (11th Cir. 2009)). Plaintiffs allege that Defendants carry on a business and/or have committed a tort in Florida.

### a. Conducting Business § 48.193(1)(a)(1)

"To establish that a defendant is 'conducting' or 'carrying on a business' for the purposes of Fla. Stat. § 48.193(1)(a)(1), 'the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit.'" *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 860 (11th Cir. 2013) (per curiam) (quoting *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000)). In determining whether Defendants' activities "show a general course of business activity," the Court considers "(1) the presence and operation of an office in Florida, (2) the possession and maintenance of a license to do business in Florida, (3) the number of Florida clients served, and (4) the percentage of overall revenue gleaned from Florida clients." *Id.* (quoting *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (internal quotation marks omitted)). Another relevant factor is a defendant's marketing and advertising in Florida. *See Carmel & Co. v. Silverfish, LLC*, No. 12-21328, 2013 WL 1177857, at *3 (S.D. Fla. Mar. 21, 2013) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996)).

As previously stated, the record does not show a general course of business activity by Defendants in Florida. It is undisputed by all parties that Defendants do not have an office in Florida, do not possess or maintain a license to do business in Florida, sold "at least 32 towels" for "at least $379.99 in Florida," garnered less than one percent of their overall sales in Florida, and do not engage in marketing or advertising in Florida. Furthermore, Plaintiffs do not specifically allege how many customers or the total percentage of sales derived from Florida, but rather, Plaintiffs allege only that Defendants offered "substantial quantities" of counterfeit goods for sale. [ECF No. 8 ¶ 23]. As a result, the Court neither knows the exact or approximate number of Florida clients allegedly targeted by Defendants, nor the exact or approximate percentage of Defendants' gross sales derived from Florida sales. Accordingly, based on the factors relevant to

a determination of jurisdiction under section 48.193(1)(a)(1), the record does not support a finding that Defendants were engaged in a general course of business activity in Florida. *See Alternate Energy Corp. v. Redstone*, 328 F. Supp. 2d 1379, 1383 (S.D. Fla. 2004) (finding that selling subscriptions to an internet site to an unknown, relatively small number of Florida residents does not constitute carrying on a business in Florida under section 48.193(1)(a)(1)).

### b. Tortious Acts - Section 48.193(1)(a)(2)

In the alternative, Plaintiffs rely on the "tortious acts within Florida" provision of the long-arm statute, which provides that a nonresident defendant is subject to personal jurisdiction in Florida "*for any cause of action arising from . . . . [c]omitting a tortious act within Florida.*" Fla. Stat. § 48.193(1)(a)(2). Accordingly, Plaintiffs must show that their trademark infringement claims arose from Defendants committing "a tortious act within Florida." Courts in the Eleventh Circuit apply a broad construction of subsection (1)(a)(2) and consistently hold that allegations of trademark infringement that occurred outside Florida are sufficient for long-arm jurisdiction if the plaintiff suffered harm in Florida. *See, e.g.*, *Louis Vuitton*, 736 F.3d at 1354; *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008); *You Fit, Inc. v. Pleasanton Fitness, LLC*, No. 12-01917, 2012 WL 12905186, at *3 (M.D. Fla. Dec. 20, 2012).

In *Louis Vuitton,* the Eleventh Circuit addressed a remarkably similar trademark action involving non-resident defendants. The plaintiff, Louis Vuitton Malletier S.A. ("Louis Vuitton"), a seller of high-end handbags, sued the defendant, an online seller of handbags, for trademark infringement. The defendant, who lived and created his website in New York, argued that there was no personal jurisdiction over him in Florida. *Louis Vuitton*, 736 F.3d. at 1347. The Eleventh Circuit disagreed, concluding that Louis Vuitton's allegations were sufficient to establish personal jurisdiction in Florida over the defendant under the "tortious act" provision of the Florida long-arm statute. *Id.* at 1356. Specifically, the Court held that trademark infringement that is facilitated by a

9

website causes injury and occurs in Florida "by virtue of the website's accessibility in Florida." *Louis Vuitton*, 736 F.3d at 1354 (quoting *Lovelady*, 544 F.3d at 1283).

Plaintiffs' Amended Complaint alleges that Defendants sold counterfeit products by virtue of a website accessible in Florida. As in *Louis Vuitton*, the allegations support a finding that Defendants committed the tortious act of trademark infringement and caused injury to Plaintiff in Florida. Accordingly, the Court finds it has specific jurisdiction over all Defendants under the long-arm statute.

### B. Due Process

Having satisfied the long-arm statute requirement, Plaintiffs now must establish that jurisdiction over Defendants comports with the Due Process Clause of the Fourteenth Amendment:

> In specific personal jurisdiction cases, we apply the three-part due process test, which examines: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts within the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton*, 736 F.3d at 1355 (citations omitted). The plaintiff must establish the first two prongs, and if it does so, "a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quoting *Diamond Crystal Brands*, 593 F.3d at 1267).

#### 1. *"Arising Out of" or Relatedness*

Under the specific jurisdiction calculus, a plaintiff's claim "must arise out of or relate to at least one of the defendant's contacts with the forum." *Id.* (citing *Fraser*, 594 F.3d at 850) (internal quotation marks omitted). The inquiry for purposes of specific jurisdiction must focus on the direct causal relationship between the defendant, the forum, and the litigation. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). "[A] relationship among the defendant, the

forum, and the litigation is the essential foundation of *in personam* jurisdiction…." *Id.* (internal quotation marks omitted).

In the instant case, Plaintiffs' trademark claims arose out of Defendants' contacts with Florida via the internet. Although Amazon has a national reach, it is accessible in Florida and used by Florida consumers to purchase products. Defendants used Amazon to sell and distribute counterfeit products in Florida and reaped pecuniary benefit from Florida customers. Thus, the first requirement is satisfied because there is a direct causal relationship between Defendants, Florida, and Plaintiffs' trademark claims. *See Louis Vuitton*, 736 F.3d at 1356 (finding a direct causal relationship between defendants selling counterfeit goods into Florida and accepting payment from Florida consumers).

### 2. *Purposeful Availment*

Under the traditional purposeful availment analysis, a plaintiff must demonstrate that the defendants purposely availed themselves of the privilege of doing business in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). Specifically, the Court assesses the nonresident's contacts with the forum state and asks whether those contacts: "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357 (citing *U.S. Sec. &. Exch. Comm.. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997)).

Traditional jurisdictional analyses are not upended simply because a case involves technology that facilitates a party's reach across state lines. Rather, the Court must apply the same factors it applies in all cases to determine personal jurisdiction. Indeed, the use of an online market, as opposed to a brick and mortar store, does not create a "virtual moat" around the defendant, preventing jurisdiction except where the defendant is incorporated or has offices.

*Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008). "[I]nternet forums such as eBay expand the seller's market literally to the world and sellers know that, and avail themselves of the benefits of this greatly expanded marketplace . . . . Sellers cannot expect to avail themselves of the benefits of the internet-created world market that they purposefully exploit and profit from without accepting the concomitant legal responsibilities that such an expanded market may bring with it." *Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 820 (E.D. Mich. 2006).

Courts have declined to exert jurisdiction over defendants who engage in "one shot affairs" through the internet, noting that such defendants do not assume any continuing obligations, and thus are not engaged in any substantial business in the forum state. *See Boschetto,* 539 F.3d at 1017-18 (finding no purposeful availment because defendant's one EBay auction sale was not part of a broader e-commerce activity—the product was only temporarily advertised and the listing closed once the item was sold—rather, the defendant's contact with the forum was extinguished once product was purchased); *see also Dynamic Software Services v. Cyberbest Tech., Inc.*, No. 13-04217, 2014 WL 3373924, at *8 (N.D. Ca. July 9, 2014).

Here, Defendants marketed and sold counterfeit products through Amazon, received at least thirty-two orders from Florida customers, and arranged for products to be shipped to Florida. Defendants sold multiple infringed products as part of a broad, long-term e-commerce business that extended its reach to Florida consumers. Such conduct is sufficient to the purposeful availment requirement. *See EnviroCare Tech., LLC v. Simanovsky*, No. 11-3458, 2012 WL 2001443, at * 4 (E.D.N.Y. June 4, 2012) (finding that the sale and shipment of three products through Amazon to the forum state is sufficient to satisfy due process's "minimum contacts" inquiry); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2nd Cir. 2010) (finding purposeful availment when the defendant offered his product for sale to New York consumers on his company's website and sold the product to New York consumers, thus invoking the benefits and protections of its laws).

### 3. *"Fair Play and Substantial Justice"*

Having found sufficient minimum contacts, the Court must also determine whether exercising personal jurisdiction over Defendants would offend traditional notions of "fair play and substantial justice." *Burger King Corp.*, 471 U.S. at 477. The Court considers the following factors in its analysis: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute. *Louis Vuitton*, 736 F.3d at 1358. The burden is on Defendants to show that asserting jurisdiction over them would be unconstitutional. *See Diamond Crystal Brands, Inc.*, 593 F.3d at 1274.

Defendants have not provided any evidence beyond the location of records and witnesses to demonstrate that they would be burdened by having to litigate this action in Florida. Florida has a strong interest in hearing the dispute and protecting consumers from confusion resulting from Defendants' tortious conduct. Moreover, Plaintiffs have a strong interest in litigating the case in its chosen forum. Indeed, Plaintiffs have multiple distributors in Florida and Dohler USA is a Florida corporation with its principle place of business in Florida. Lastly, the Court has an interest in resolving the disputes involving consumers in Florida. Accordingly, the Court concludes that Defendants have not presented the requisite "compelling case" that exercising jurisdiction would be unconstitutionally unfair. *Burger King Corp.*, 471 U.S. at 477. Based on the foregoing, the Court finds that the exercise of personal jurisdiction over Defendants is proper.

## III. TRANSFER

Alternatively, Defendants request that the Court transfer this matter to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a). A district court may transfer a case to any district where it might have been brought pursuant to § 1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice." This analysis proceeds in two stages. First, a

court must determine whether the case may have been brought in the desired district of transfer. *Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002). The parties do not dispute that this action could have been brought in the Western District of North Carolina, therefore the Court turns to an evaluation of the second prong.

"Once a court finds an action could have been brought in the transferee forum, the court must weigh various factors . . . . to determine if a transfer . . . . is justified." *Filtalert Corp. v. Int'l Business Corp.*, No. 15-22845, 2015 WL 9474640, at *2 (S.D. Fla. Dec. 23, 2015) (internal citations omitted). The Eleventh Circuit instructs that a district court should consider the following list of private and public interest factors to determine whether a transfer is appropriate:

> (1) the convenience of the witnesses; (2) the location of the relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citation omitted). The Court addresses these factors in turn.

**A. Convenience of the Witnesses**

"'The convenience of the witnesses is probably the single most important factor in transfer analysis.'" *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 339 (E.D. N.Y. 2006)) (internal quotation marks omitted). The party seeking transfer must support its motion by clearly specifying the witnesses to be called, and the importance of their testimony. *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1362 (S.D. Fla. 2001).

Defendants have identified only Magura, Peniston, and "other witnesses" as having knowledge of relevant facts about the sale and distribution of the infringing and counterfeited

products. Defendants have not named any other witnesses or provided an approximate number of witnesses that would have to travel to this District from North Carolina. Weighing the parties' submissions, the Court concludes that the convenience of the witnesses does not favor transfer.

### B. Location of Relevant Documents and Ease of Access to Sources of Proof

Defendants have not pointed to any relevant records that would be difficult to transport to this forum. Moreover, given that the electronic storage and transfer of documents between litigants has become the norm, many courts find that the location of relevant documents between litigants should be given little weight in the transfer analysis. *See, e.g. Microspherix LLC v. Biocompatibles, Inc.*, No. 9:11-cv-80813, 2012 WL 243764, at *3 (S.D. Fla. Jan. 25, 2012) ("In a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant."). Thus, the Court finds this factor does not weigh in favor of transfer.

### C. Convenience of Parties

"Where a transfer 'merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain.'" *Mason*, 146 F. Supp. 2d at 1361 (quoting *Eye Care Int'l v. Underhill*, 119 F. Supp. 2d 1313, 1319 (M.D. Fla. 2000)). Defendants have demonstrated that conducting this litigation in the Western District of North Carolina would be more convenient to them. Defendants, their relevant documents, and identified witnesses are located in Asheville, North Carolina. In addition, many of the depositions will take place in North Carolina due to Defendants' presence there. Although Plaintiffs have a presence throughout the United States, their principal places of business are in Florida. In addition, Plaintiffs likely have some relevant witnesses and documents in this district. Balancing Plaintiffs' and Defendants' conveniences, the Court finds this factor is neutral.

### D. Locus of Operative Facts / "Center of Gravity"

Courts in this district have acknowledged that the locus of operative facts in a trademark infringement action is often the headquarters of the allegedly infringing entity, where design and development of the product at issue took place. *Paradies Shops, LLC v. S.A.S. Jean Cassegrain & Longchamp USA, Inc.*, No. 12-03137, 2013 WL 12098826, at *4 (N.D. Ga. Feb. 25, 2013); *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1276 (S.D. Fla. 2011) (finding that the "center of gravity" for patent infringement cases is where the accused product was designed and developed); *Trace-Wilco, Inc. v. Syantec Corp.*, No. 08-80877, 2009 WL 455432, at *2-3 (S.D. Fla. Feb. 23, 2009) (finding that the district court should be as close to the "milieu" of the infringing device and the hub of activity centered around its production, and thus district courts may disregard the plaintiff's choice of forum in cases involving claims of patent infringement).

Defendants contend, and Plaintiffs do not dispute, that the allegedly infringing and counterfeit products were part of their core business in North Carolina, and that the products were designed, promoted, and sold from their headquarters in North Carolina. Based on Defendants' proffer, the Court finds that the center of gravity in this litigation is in North Carolina. Therefore, this factor weighs in favor of transfer.

### E. Availability of Process

The parties do not address the availability of process. In any event, this factor is neutral because either district would have the power to compel identified party witnesses to appear at trial, and both this Court and the North Carolina courts can evaluate trademark infringement.

### F. Relative Means of the Parties

Defendants do not contend that they would be significantly financially impacted by transfer, and Plaintiffs do not posit that they would be unduly financially burdened by litigating this action in North Carolina. This factor is thus neutral.

### G. Forum's Familiarity with Governing Law

The parties do not contest that both courts would be applying federal trademark law. Therefore, this factor is neutral.

### H. Weight Accorded a Plaintiff's Choice of Forum

The movant seeking a venue transfer has the burden to establish that a transfer is warranted, and a plaintiff's choice of forum "should not be disturbed unless it is clearly outweighed by other considerations." *Elite Advantage LLC v. Trivest Fund, IV, L.P.*, No. 15-22146, 2015 WL 4982997, at *5 (S.D. Fla. Aug. 21, 2015) (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)) (internal quotation marks omitted). However, only minimal deference is required when a plaintiff has chosen a forum that is not its home forum. *Cellularvision v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)). Moreover, courts accord plaintiffs less deference "when the operative facts underlying the action occurred outside the district chosen by the plaintiff." *Moghaddam v. Dunkin Donuts, Inc.*, No. 02-60045, 2002 WL 1940724, at *3 (S.D. Fla. Aug. 13, 2002).

Plaintiffs cite *J.I. Kislak Mortgage Corp. v. Connecticut Bank and Trust Co., N.A.*, 604 F. Supp. 346, 348 (S.D. Fla. 1985) for the proposition that with "the absence of a clear difference in convenience, the plaintiff's choice of forum is determinative." In *J.I. Kislak Mortg. Corp.*, the Court denied transfer when Defendant's motion to dismiss contained merely conclusory assertions as to the merits of its entitlement to a change of venue. Similarly, Defendants have not named the exact witnesses who will need to be deposed or provided a description or an approximation of how

many business records will be provided during discovery. Dohler USA and Vulcano, distributors of the Dohler Marks, are Florida companies. As there are no clear differences of convenience, the Court accords deference to Plaintiffs' forum choice. Therefore, this factor weighs against transfer to the Western District of North Carolina.

**I. Trial Efficiency and the Interests of Justice**

Plaintiffs do not dispute Defendants' contention that the Western District of North Carolina has a favorable docket and can move the case swiftly to trial. Defendants point to Federal Case Management statistics to demonstrate that the Western District of North Carolina has 408 total filings per judgeship and 376 weighted filings per judgeship. This figure is considerably lower than filings per judgeship in the Southern District of Florida. This factor thus weighs in favor of transfer to the Western District of North Carolina.

* * *

In sum, the only factors that carry any weight in favor of transfer are the locus of operative facts not being in Florida and trial efficiency. These factors do not clearly outweigh the presumption in favor of Plaintiff's choice of forum, therefore, the request to transfer is denied.

**CONCLUSION**

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim, and in the Alternative, Motion to Transfer [ECF No. 19] is **GRANTED in part**. Plaintiff's Amended Complaint [ECF No. 8] is **DISMISSED WITHOUT PREJUDICE.** Plaintiffs shall file a Second Amended Complaint within fourteen (14) days of the date of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of October, 2017.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE